UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 2007-223 (WOB)

DALE EVERSOLE                                              PLAINTIFF

VS.             <u>MEMORANDUM OPINION and ORDER</u>

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                            DEFENDANT


This matter is before the court on the plaintiff's motion for summary judgment (Doc. 9) and the cross-motion for summary judgment of the Commissioner (Doc. 10).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence.  <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached."  <u>Alexander v. Apfel</u>, 17 Fed. Appx. 298, 300(6th Cir. 2001) (<u>citing Buxton</u> v. <u>Halter</u>, 246 F.3d 762, 772-73 (6th Cir. 2001)).

In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social Security Act.  42 U.S.C. § 423(a)(1)(D).  The Act defines

1

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Id. at 534(citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities." Id. (citing 20 C.F.R. §§404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not

disabled if he can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the ALJ's decision, the claimant was fifty years old and he has a seventh grade education. (AR 448, 470). His past employment included work as a security guard. The claimant alleges he became disabled in June 2003 due to the effects of pain in his feet and lower back, chronic obstructive pulmonary disease, diabetes, hypertension and cardiomyopathy. The claimant has a history of binge drinking, although he claims he stopped drinking in 2005, and he also smokes cigarettes.

As explained by the ALJ, the evidence demonstrates that in July 2003 the claimant received treatment for cardiomyopathy (related to either a hypertensive crisis or alcohol). (AR 122-24). The record does not show further treatment until May 2004 when the claimant was diagnosed with diabetes mellitus. (AR 174). In June and October 2004, the claimant sought refills for his medication.

There is no evidence of further treatment until February 2005 when he was noncompliant with his medication and sought treatment for high blood pressure. The claimant responded well once he began taking his medication.

In May 2005, the claimant fell after a four-day drinking binge. He was diagnosed with A lung contusion and pneumonia and

3

was admitted to the intensive care unit.  (AR 128-65).  In June 2005, the claimant reported that he was feeling much better and was using oxygen only at night.

On December 28, 2005, Dr. Barefoot performed a consultative examination.  He noted that claimant did not use a cane to ambulate, had full range of motion in his spine, normal muscle strength in his arms and legs, but had some problem squatting.  The doctor noted that his pulmonary function tests were consistent with chronic obstructive pulmonary disease.  Dr. Barefoot concluded that although the claimant is limited from performing strenuous work, he is able to walk and stand.

Dr. Maxey's treatment notes from 2005 show that the claimant complained of low back pain and sought medication refills for his diabetes and hypertension.  Dr. Maxey referred Mr. Eversole to Simon and True Medical Consultants for his back pain.

When the claimant presented for pain treatment in November 2005, the claimant was using a cane, straight leg raising on the right was positive at 75 degrees, and some decrease in lumbar flexion/extension was noted.  However, a lumbar spine MRI scan revealed no disc herniation and only some spinal stenosis.  Epidural steroid injections were administered, and the claimant reported that the shots and medication gave him some relief.  On his last reported visit to Simon and True, dated July 11, 2006, the claimant was neurologically intact, straight leg raises were within normal limits, and no cane use was noted.  (AR 180-208, 219-26, 284-94).

4

Dr. Maxey's 2006 treatment notes show that the claimant continued to receive medication for his diabetes and hypertension. Because Mr. Eversole complained of chest pain and intermittent numbness in his left arm and mouth area, Dr. Maxey referred him to Dr. Ashwini Anand. Although Dr. Anand found the left ventricular dysfunction noted above, repeated physical examinations performed by him through May 2006 evidenced regular heart rate and rhythm, clear lungs, and mild to no extremity edema (AR 302-19).

At the hearing, the ALJ sought the testimony of the claimant and a vocational expert. Upon hearing the testimony at the hearing and reviewing the record, the ALJ performed the requisite five step evaluation for determining disability.

The ALJ determined at step one that claimant had not been engaged in substantial gainful activity since the onset of disability. At step 2, the ALJ determined that the claimant has the following severe impairments: hypertension, diabetes mellitus, a history of alcoholic and hypertensive cardiomyopathy, chronic obstructive pulmonary disease, mild congenital spinal stenosis, and a history of alcohol abuse in reported remission. At step 3, the ALJ determined that the claimant does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1. At step 4, the ALJ found that the claimant could not perform his past relevant work as a security officer.

At step 5, the ALJ found that the claimant has the residual

5

functional capacity to perform light work that does not require more than occasional stooping, kneeling, bending or crouching. The ALJ also found that the claimant should not be subjected to concentrated exposure to vibration, temperature extremes, pulmonary irritants, or excess humidity. The appropriate work must also involve only simple, non-detailed tasks where public and co-worker contact is casual and infrequent, supervision is direct and non-confrontational, and changes in the workforce are infrequent and gradually introduced.

The ALJ, relying on the testimony of the vocational expert, concluded that a significant number of jobs were available in the national economy that the claimant could perform[1] and, therefore, he was not disabled under the Act.

The claimant argues that the ALJ erred in failing to give the appropriate weight to the report of his treating physician, Dr. Maxey. The court, however, finds that the ALJ extensively analyzed the doctors' reports in question and determined their credibility by looking at the objective medical records.

The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ

---

[1] The vocational expert testified that a person with an RFC as identified by the ALJ could perform the occupations of production laborer (7,000 jobs in Kentucky and 356,000 jobs nationally), hand packer (600 jobs in Kentucky and 30,000 jobs nationally), and production assembler (700 jobs in Kentucky and 70,000 jobs nationally). (AR 476).

6

does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

Here, plaintiff specifically argues that the ALJ ignored the opinion of Dr. Maxey, his treating physician, whose nurse completed an RFC on his behalf, finding that the claimant could not lift or carry more than 8 pounds occasionally, could not lift or carry any weight frequently, could not sit for more than 10 minutes or walk for more than 15 minutes, should never climb, crouch or crawl and only occasionally balance and kneel. The report also states that the claimant's ability to reach, handle, feel, push and pull are all affected by the claimant's diabetic neuropathy in the lower extremities. The doctor's evaluation also restricts the claimant from several environmental factors as a result of his congestive heart failure "requiring continuous use of [oxygen]." The RFC also recites that the claimant uses a walking cane to maintain balance.

The ALJ explained his reasons for discounting Dr. Maxey's RFC opinion:

> I am aware that Dr. Maxey's office issued a capacity statement one day prior to the hearing, and if accepted Mr. Maxey's restrictions would limit the claimant to less than the full range of sedentary work. However, the claimant admitted at the hearing that he had presented to Dr. Maxey's office on October 11th and self-reported his limitations to Dr. Maxey's nurse, Ms. McFarland, who completed the form based upon this information. Because of this and the fact that the opinions are not well supported by Dr. Maxey's treatment notes, diagnostic evidence, or physical examinations performed by other physicians of record, I find that the opinions rendered in Exhibit 21F merit little

7

weight.

(AR 19-21).

The claimant does not address the ALJ's finding that the report was not completed by Dr. Maxey, but by his nurse and that the report was based upon the claimant's self-reporting to the nurse. Instead, the claimant cites to sporadic statements made in the record surrounding the times that he was non-compliant with his medications, entered the hospital after an extended drinking binge with pneumonia, or that related to his condition prior to receiving steroid shots.

The court finds that the ALJ stated sufficient reasons for discounting the RFC assessment provided by Dr. Maxey's nurse: it was not based on objective medical observations or medical data, but on the subjective complaints provided by the claimant. See Warner v. Commissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004)(medical opinion must be based upon objective medical evidence).

Further, although the ALJ gave little weight to the assessment from Dr. Maxey's office, the ALJ did consider Dr. Maxey's medical records in reaching his RFC determination. Accordingly, the court finds that the ALJ did not err in limiting the weight afforded to the RFC assessment provided by Dr. Maxey's nurse.

The claimant also argues that the ALJ erred in not including his mental limitations in the hypothetical questions he posed to the vocational expert. It is well established that the ALJ's

8

assessment of the claimant's residual functional capacity must be made only after all of a claimant's limitations have been taken into account.  20 C.F.R. § 416.945.  In addition, a hypothetical question posed to a vocational expert must include a "complete assessment of [the claimant's] physical and mental state and should include an accurate portrayal of [his] individual physical and mental impairments."  Howard v. Commissioner of Social Security, 276 F.3d 235, 239 (6th Cir. 2002)(quoting Varley v. Secretary of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)).  However, the ALJ is only required to incorporate those limitations he finds are credible.  Casey v. Secretary of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir.1993).

The claimant argues that the hypothetical questions posed to the vocational expert by the ALJ should have incorporated the limitations set forth in Psychologist Kenneth Starkey's consultative report.  Specifically, Psychologist Starkey found that the claimant had a verbal IQ of 80, performance score of 76, full scale IQ of 76, moderate to severe deficits in reading, spelling and computation skills, and a marginal ability to tolerate stressors and pressures associated with most day-to-day work settings.  The claimant argues that the ALJ's failure to incorporate these limitations into the hypothetical questions is error.

As the Commissioner notes, the record does not suggest that the claimant's mental impairments caused functional limitations any more restrictive than those incorporated into the ALJ's

9

hypothetical questions. In crafting a hypothetical question, the ALJ is to set forth all of the claimant's limitations and does not need to set forth the specific medical impairment or diagnosis. See Mitchell v. Astrue, No. 07-5628, 2007 WL 4232914 (6th Cir. Dec. 3, 2007)(quoting Webb v. Commissioner of Social Security, 368 F.3d 629, 633 (6th Cir. 2004));

In his first hypothetical question, the ALJ told the vocational expert to consider a person with a seventh grade education, unskilled work experience, and who was limited to performing only simple tasks. The ALJ also restricted the hypothetical claimant to only casual and infrequent contact with the public and coworkers, and also provided that supervision must be direct and non-confrontational. In addition, the ALJ included a restriction limiting changes in the work place to those occurring only occasionally and stated that any changes should be introduced gradually.

The court finds sufficient evidence exists to support the ALJ's determination that these limitations adequately take into account the claimant's borderline intellectual functioning, and the claimant's limited ability to tolerate the stresses of the workplace. The ALJ did not ignore the claimant's mental evaluation, but placed restrictions that took into account what he could still do. The court finds that the functional limitations included in the hypothetical question are supported by substantial evidence and that it represents a sufficiently accurate portrayal of the claimant's impairments.

The claimant also argues that the ALJ erred in considering the opinion of a non-examining source because he did not have claimant's complete medical file when he rendered his opinion. Specifically, claimant argues that the non-examining expert did not have the assessment completed by Dr. Moxey's nurse. As discussed above, however, the court finds that the ALJ properly discounted this assessment since it was based on the claimant's self-reporting to Dr. Moxey's nurse and was not based on objective medical evidence. Accordingly, it is harmless error that the non-examining physician did not review the assessment and does not necessitate remand. Heston v. Commissioner of Social Security, 245 F.3d 528, 535 (6th Cir. 2001).

It is well established that the ALJ may accept the opinion of a non-treating physician over that opinion of a treating physician where substantial evidence support the ALJ's decision. Combs v. Commissioner of Social Security, 459 F.3d 640, 651(6th Cir. 2006) (en banc); 20 C.F.R. § 404.1527(f); SSR 96-6. The court finds that the ALJ did not err in relying on the opinions of the non-treating physicians because he gave sufficient reasons for discounting the assessment from Dr. Moxey's office.

Lastly, the claimant argues that the ALJ erred in not properly evaluating his pain. Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. Kirk v. Secretary of H.H.S., 667 F.2d 524, 538 (6th Cir. 1981).

In order to find the claimant disabled on the basis of pain

11

alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. Duncan v. Secretary of Health & Human Servs, 801 F.2d 847, 852-53 (6th Cir. 1986). See also Felisky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994); Jones v. Secretary of Health & Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" Duncan, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. Felisky, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. King v. Heckler, 742 F.2d 968, 975 (6th Cir. 1984). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. Felisky, 35 F.3d at 1039-41.

12

Here, The ALJ discussed the medical evidence associated with claimant's complaints of low back pain. The objective medical evidence does not support a finding that the claimant's pain was of such a level to be disabling. The ALJ stated:

> Dr. Maxey referred Mr. Eversole to Simon and True Medical Consultants. When he presented for [pain] treatment in November 2005, the claimant was using a cane, straight leg raising on the right was positive at 75 degrees, and some decrease in lumbar flexion/extension was noted. However, a lumbar spine MRI scan revealed no disc herniation, only some spinal stenosis that was felt to be congenital in nature. Epidural steroid injections were administered, and the claimant reported that his pain was much better after administration of the shots and use of medication. On his last reported visit to Simon and True dated July 11, 2006, the claimant was neurologically intact, straight leg raising was within normal limits, and no cane use was noted (Exhibits 9F, 11F, 19F, and 20F).

(AR 19).

In addition, the ALJ found that the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. A claimant's complaints of pain are subject to a credibility determination. In light of the Commissioner's opportunity to observe the claimant's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. Kirk, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." Felisky, 35 F.3d at 1036.

Here, the ALJ explained that he considered the claimant's subjective allegations and found them to be not entirely credible. The ALJ stated:

> Reports and findings in the medical evidence contradict the

13

>       claimant's testimony: although Mr. Eversole presented using
>       oxygen and a cane, July 2006 treatment notes from Simon and
>       True did not reference further cane use (Exhibit 19F), and
>       as early as June 2005 the claimant reported only using
>       oxygen at night (Exhibit 6F).  During Dr. Barefoot's
>       December 2005 examination, the claimant reported using
>       oxygen as needed, again mostly at night (Exhibit 12F), and
>       neither consultative examiner Barefoot nor consultative
>       examiner Starkey noted that Mr. Eversole carried an oxygen
>       tank with him to their examinations (both in December 2005).
>       And, pulmonary function studies performed at that time
>       evidenced only mild restriction with obstruction.  I also
>       note that the claimant continues to smoke against medical
>       advice.  Additionally, although the claimant asserts that he
>       does not have an alcohol problem, both his responses to
>       questions at the hearing and the medical evidence belie that
>       assertion.  In May 2005, the claimant's wife reported to the
>       Marymount physicians that Mr. Eversole had been binge
>       drinking for 4 days straight (Exhibits 5F, 6F), but when
>       asked about this at the hearing, the claimant indicated that
>       he did not consider this behavior to have been a problem.
>       The claimant has a history of alcohol-related arrests, and
>       despite his assertions of sobriety, he has not undergone any
>       recent treatment program for alcoholism, and he denied
>       current involvement with an outpatient program such as
>       Alcoholics Anonymous.  During Dr. Starkey's December 2005
>       consultative examination, Mr. Eversole's alcohol abuse was
>       felt to be in only partial remission, and Dr. Starkey noted
>       that the claimant was evasive when asked about his alcohol
>       use (Exhibit 10F).  Overall, the claimant's ongoing
>       evasiveness regarding his substance use and his non-
>       compliance with treatment advice (e.g. binge drinking after
>       a diagnosis of diabetes and continued smoking despite oxygen
>       therapy) significantly erodes his credibility.

(AR 21).

The ALJ's finding that claimant's testimony is not credible is entitled to deference and this court finds no reason to disturb the ALJ's credibility finding.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support

14

the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds that the findings of the ALJ are supported by substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1. That the administrative decision be, and it hereby is, **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g);

2. That the motion for summary judgment of the plaintiff (Doc. 9) be, and it hereby is, **denied**;

3. That the cross-motion for summary judgment of the Commissioner (Doc. 10) be, and it hereby is, **granted**; and

4. That this matter be, and it is, hereby **dismissed** and **stricken** from the docket of this court.

This 2nd day of January, 2008.



Signed By:
William O. Bertelsman
United States District Judge

15